# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JERRY SILVERSTEIN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:17-00012-KD-N** |
| | ) | |
| **WEATHER SHIELD MFG., INC.,** | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This action is before the Court on the motion to dismiss Count Five of the complaint under Federal Rule of Civil Procedure 12(b)(6) (Doc. 36) filed by Defendant Weather Shield Mfg., Inc. ("WSM"). The Court has referred the motion (Doc. 36) to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). See S.D. Ala. GenLR 72(b); (11/13/2017 electronic references). Plaintiff Jerry Silverstein has timely filed a response (Doc. 48) in opposition to the motion. WSM has not filed any reply to the response, the deadline to do so has passed, and the motion is now under submission. (*See* Doc. 40). Upon consideration, and pursuant to § 636(b)(1)(B)-(C) and Federal Rule 72(b)(1), the undersigned **RECOMMENDS** that the motion to dismiss be **DENIED**.

## I.   *Factual Determinations*

Per the well-pleaded factual allegations in the complaint (Doc. 1),[1] on or about January 20, 2000, Silverstein was building a custom luxury home in Mobile,

---

[1] In deciding a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," the Court must construe the complaint in the light most favorable to the plaintiff, "accepting all well-pleaded facts that are alleged therein to be true." *E.g.*, *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013).

Alabama, when he purchased 70 matching windows and doors manufactured by WSM, along with a lifetime warranty on same, and installed them in the home. However, since being installed, the windows and doors have deteriorated due to water infiltration, causing the wood structural material to rot and deteriorate. In 2006, and again in 2014, Silverstein noticed this deterioration and notified WSM. WSM performed an inspection after being notified in 2006, but denied the rot and offered a paint-only solution. After being notified in 2014, WSM had several inspections performed, with two of the inspectors recommending the windows and doors be replaced. Again, however, WSM did not replace the windows, instead only offering to paint over the rotten wood. In October 2016, Silverstein informed WSM of additional deterioration, but WSM again refused to repair or replace the windows and doors.

Based on the foregoing allegations, Silverstein initiated this action by filing a five-count complaint with the Court (Doc. 1). The first four counts allege state law causes of action for breach of contract and breach of warranty. Count Five alleges a cause of action under the federal Magnuson-Moss Warranty Act of 1975, 15 U.S.C. § 2301, *et seq.* ("MMWA," or "the Act").[2]

---

[2] Silverstein alleges diversity under 28 U.S.C. § 1332(a) as the sole basis for the Court's subject matter jurisdiction. However, his allegations demonstrating diversity of citizenship are deficient because he does not allege the principal place of business of WSM, a corporation. *See* 28 U.S.C. § 1332(c)(1). Nevertheless, the allegations in the complaint demonstrate that this Court has jurisdiction under MMWA's jurisdictional grant. *See Carter v. Killingsworth*, 477 F. App'x 647, 648 (11th Cir. 2012) (per curiam) (unpublished) ("Under the MMWA, an individual may file suit for damages and other relief for violations of a service contract or warranty. 15 U.S.C. § 2306(b). But a plaintiff may only file suit under the MMWA if the amount in controversy is $50,000 or more. 15 U.S.C. § 2310(d)(3)(B)."); *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 956 (7th Cir. 1998) ("The unusual jurisdictional clause in th[e MMWA], 15 U.S.C. § 2310(d)(1), permits suit by a person claiming to be 'damaged by the failure of a supplier, warrantor, or service contractor to comply with

## II.  *Analysis*

The MMWA "imposes specific duties and liabilities on suppliers who offer written warranties on consumer products." 16 C.F.R. § 700.3; *Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.*, 505 F. App'x 899, 904 (11th Cir. 2013) (per curiam) (unpublished). For purposes of the Act, "[t]he term 'consumer product' means any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)." 15 U.S.C. § 2301(1).

WSM argues that Count Five is due to be dismissed for failure to state a claim because the windows and doors at issue do not qualify as "consumer products," based on the following Federal Trade Commission interpretive regulation:[3]

> The coverage of building materials which are not separate items of equipment is based on the nature of the purchase transaction. An analysis of the transaction will determine whether the goods are real or

---

any obligation under this [Act], *or* under a written warranty, implied warranty, or service contract' (emphasis added). In other words, an aggrieved customer may sue on state-law claims in federal court, whether or not the parties are of diverse citizenship.").

[3]      "To clarify the meaning of § 2301 and other provisions, the FTC, in connection with its authority to implement the Act, *see* 15 U.S.C. § 2312(c), issued 'interpretations' in 1977 via notice-and-comment procedures, *see* 42 Fed. Reg. 36112, 36112 (July 13, 1977). The interpretations are codified at 16 C.F.R. § 700.1…In the FTC's own words, its Magnuson–Moss interpretations are 'advisory in nature,' are not 'substantive rules,' and lack 'the force or effect of statutory provisions.' 734 42 Fed. Reg. 36112, 36112 (July 13, 1977)." *Miller v. Herman*, 600 F.3d 726, 733–34 (7th Cir. 2010).
          At least one federal court of appeals has found the FTC's interpretations sufficiently persuasive to warrant "a reasonably high degree of deference[,]" *id*. at 734, and Silverstein does not argue against application of § 700.1 here.

personal property. The numerous products which go into the construction of a consumer dwelling are all consumer products when sold "over the counter," as by hardware and building supply retailers. This is also true where a consumer contracts for the purchase of such materials in connection with the improvement, repair, or modification of a home (for example, paneling, dropped ceilings, siding, roofing, storm windows, remodeling). However, where such products are at the time of sale integrated into the structure of a dwelling they are not consumer products as they cannot be practically distinguished from realty. Thus, for example, the beams, wallboard, wiring, plumbing, windows, roofing, and other structural components of a dwelling are not consumer products when they are sold as part of real estate covered by a written warranty.

In the case where a consumer contracts with a builder to construct a home, a substantial addition to a home, or other realty (such as a garage or an in-ground swimming pool) the building materials to be used are not consumer products. Although the materials are separately identifiable at the time the contract is made, it is the intention of the parties to contract for the construction of realty which will integrate the component materials. Of course, as noted above, any separate items of equipment to be attached to such realty are consumer products under the Act.

16 C.F.R. § 700.1(e)-(f) (section markers omitted).

WSM argues that, because Silverstein purchased the subject windows and doors "for installation into the construction of a new, custom-built luxury home and not for the purpose of improvements, repairs, or modifications of an existing home[,]" the windows and doors "became part of the realty" and are thus not "consumer products" as defined by § 700.1.   (Doc. 36 at 4).   In support, WSM cites *Miller v. Herman*, 600 F.3d 726 (7th Cir. 2010).   However, WSM's substantive application of that case is flawed for at least two reasons.

First, WSM claims that *Miller* "**held**, 'When products are purchased to add to

an existing dwelling, then they are consumer products, but when purchased as part of a larger real estate sales contract, they are not.' " (Doc. 36 at 4 (emphasis added)). While this quotation does appear in *Miller*, it is not a holding of the Seventh Circuit. Rather, it was included as part of a parenthetical quotation of a California state court decision, *Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212, 48 Cal. Rptr. 3d 247, 255 (2006), which was itself included in a string citation comparing cases to show that "there is arguably some ambiguity in the case law interpreting subsections (e) and (f)…" *Miller*, 600 F.3d at 737.

Second, WSM is incorrect that the "purchase and intended use of the windows by the Plaintiff in this case mirrors that of the claimant in *Miller*." (Doc. 36 at 4). In that case, plaintiff Miller contracted with builder Herman and his company to construct a new, custom-built home. *Miller*, 600 F.3d at 728. In the course of building the home, Herman purchased and installed windows and doors that were warranted by the manufacturer, Pella Products. *Id.* After the windows and doors leaked, causing mold damage to the home, Miller filed suit against Herman, Herman's company, and Pella, alleging claims under MMWA, among others. *See id.* at 729. All defendants moved for judgment in their favor on the grounds that the windows and doors were not "consumer products" under MMWA. The district court granted dismissal on this basis, and the Seventh Circuit affirmed.

The Seventh Circuit summarized the plaintiff's argument against the district court's decision as follows:

> In Miller's view, the fact that the windows were purchased to be installed into the house at a later time render[ed] the transaction…an

"over the counter" transaction like that contemplated in 16 C.F.R. §
700.1(e). He liken[ed] his situation to that of the plaintiffs in *Wilson v.
Semling–Menke Co.,* 277 Neb. 928, 766 N.W.2d 128 (2009), one of
whom, Linda, served as the general contractor of the house they were
having built for themselves. Linda went to a building supply store and
purchased twenty-two windows, which were later installed into the
house and, like those at issue here, allegedly allowed water into the
structure. *See id.* at 130. The Wilsons brought suit under Magnuson–
Moss, alleging the windows were consumer goods, and the Nebraska
Supreme Court ultimately ruled in their favor. Citing 16 C.F.R. §
700.1(e), that court concluded that the Wilsons' purchase of the
windows rendered them "consumer products" because it "resembled a
purchase 'over the counter' more than it resembled a purchase by a
contractor." *Id.* at 133. The court specifically noted that the Wilsons
"did not have a contract with a builder for the house as a whole, but
instead purchased the windows separately." *Id.* at 134.

*Id.* at 735.   The Seventh Circuit disagreed, holding:

We do not find Miller's situation analogous to that faced by the Wilsons,
or, more fundamentally, within the purview of 16 C.F.R. § 700.1(e).
Miller did not go to the store and engage in a transaction for windows.
Instead, he specifically alleged that "*Herman* purchased, on behalf of
the Millers, fixed and casement windows and several hinged doors and
a slider patio door manufactured by Pella." Compl. ¶ 12 (emphasis
added). This allegation is supported by the record: the invoice for the
windows lists "Herman, Jim and Associat [sic]," not Miller, as the
customer. The only contract alleged here is one between Herman and
the Millers, for a home. Herman's separate purchase of the windows
was incidental to that transaction—it did not stand alone. Although
Miller technically paid for the windows by supplying Herman with the
funds, and may have influenced (or dictated, as Miller asserted at oral
argument) Herman's decision to purchase Pella-manufactured
windows, when he received the windows they were "integrated into the
structure of a dwelling" and could not be "practically distinguished from
realty." 16 C.F.R. § 700.1(e). Miller contracted for the windows in
connection with the construction of a *new* home, not in connection with
the "improvement, repair, or modification" of an *existing* home as
contemplated by subsection 700.1(e). *See Muchisky v. Frederic Roofing*

*Co.,* 838 S.W.2d 74, 78 (Mo. Ct. App. 1992) (holding that the shingles used to re-roof an existing home were consumer products and noting that "[i]t appears that as to products which are becoming a part of realty the distinction drawn is whether the product is being added to an already existing structure or whether it is being utilized to create the structure"). Indeed, we agree with the appellees that 16 C.F.R. § 700.1(f), which addresses the situation in which consumers contract for the construction of a new home, is more applicable here.

Subsection 700.1(f) provides:

> *In the case where a consumer contracts with a builder to construct a home, ... the building materials to be used are not consumer products.* Although the materials are separately identifiable at the time the contract is made, it is the intention of the parties to contract for the construction of realty which will integrate the component materials. Of course, as noted above, any separate items of equipment to be attached to such realty are consumer products under the Act.

(emphasis added). This interpretation is a much closer fit to the facts alleged in Miller's complaint. Miller contracted with Herman for a home. He agreed to pay Herman roughly $500,000 for the home under a single contract, not $(500,000–X) for the home under one contract and $X for the windows under another. He expected to (and did) receive a fully, if allegedly poorly, completed home, not an incomplete home accompanied by a stack of uninstalled, nonintegrated windows.

...

We are...unpersuaded by Miller's claim that applying subsection 700.1(f) here would undermine subsection 700.1(e). His theory is that subsection (f), taken alone, "proves too much" because it ignores the terms of the contract between the builder and the buyer. He advocates instead for a concurrent reading of subsections (e) and (f), which he asserts was the approach taken by the Nebraska Supreme Court in *Wilson*. The *Wilson* court did indeed take both subsections (e) and (f) into account, but it did not read the provisions concurrently, nor did it elevate one above the other: it simply evaluated both and applied the one that most closely fit the facts before it. The *Wilson* court noted that

there was no contract between a buyer and a builder, and explained that "the purchase of the windows resembled a purchase 'over the counter' more than it resembled a purchase by a contractor, as is required under 16 C.F.R. § 700.1(e) for building materials to be considered 'consumer products.'" *Wilson*, 766 N.W.2d at 133.

*Id.* at 735–36.

Here, the complaint indicates, and WSM does not contest, that Silverstein was constructing his new house himself when he purchased the subject windows and doors. Silverstein thus urges the Court, as Miller (unsuccessfully) urged the Seventh Circuit, to apply the Nebraska Supreme Court's reasoning in *Wilson v. Semling–Menke Co.* In reaching its conclusion, the *Wilson* court, unlike the Seventh Circuit, read §§ 700.1(e) and (f) in conjunction with a § 700.1(a), stating:

> Although there is some ambiguity as to whether the windows can be considered "consumer products," 16 C.F.R. § 700.1(a) clearly states that "[w]here it is unclear whether a particular product is covered under the definition of consumer product, any ambiguity will be resolved in favor of coverage." Under these circumstances, the purchase of the windows resembled a purchase "over the counter" more than it resembled a purchase by a contractor, as is required under 16 C.F.R. § 700.1(e) for building materials to be considered "consumer products."

*Wilson*, 766 N.W.2d at 133.

As the Seventh Circuit noted, "there is arguably some ambiguity in the case law interpreting subsections (e) and (f)," with some cases looking to whether the products are being added to a new or existing structure, and others looking instead to the nature of the transaction in which the products were purchased. *See Miller*, 600 F.3d at 737 (*comparing Weiss v. MI Home Prod., Inc.*, 376 Ill. App. 3d 1001, 877 N.E.2d 442, 445 (2007) ("[T]he distinction drawn is whether the product is being

added to an already existing structure or whether it is being utilized to create the structure."), *Atkinson*, 48 Cal. Rptr. 3d at 255 ("[W]e find that the crucial distinction is the time of sale. If the products are purchased in order to add them to an existing dwelling, then the products are consumer products. If, on the other hand, the products are purchased as part of a larger real estate sales contract, or contract for a substantial addition to a home, they are not."), *and Muchisky*, 838 S.W.2d at 78 ("It appears that as to products which are becoming a part of realty the distinction drawn is whether the product is being added to an already existing structure or whether it is being utilized to create the structure.... The presence of subsection (f) indicates that the Commission was utilizing 'time of sale' as the entry into a commitment not the completion of the obligation."), *with Illinois ex rel. Mota v. Cent. Sprinkler Corp.*, 174 F. Supp. 2d 824, 831 (C.D. Ill. 2001) ("Whether non-separate items of equipment (integral component parts of the structure, such as wiring, plumbing, ducts, and other items) are consumer products depends upon how they are purchased."), *and Wilson*, 766 N.W.2d at 133 (examining the nature of the transaction for the windows). *See also* Dee Pridgen and Richard M. Alderman, Consumer Protection and the Law § 14:5 ("Building materials constitute real property when integrated into a structure by a builder[] but are considered consumer products if purchased over the counter by a consumer or by a contractor on behalf of a consumer for a home improvement project. [FN 20 - …One commentator has criticized the different treatment of identical building materials depending on whether they are purchased for remodeling or for the initial building. *See* Curtis R. Reitz, Consumer Protection

Under the Magnuson-Moss Warranty Act 134 (1978).]").    At least one district court in this Circuit has adopted the first approach, though without citation to supporting authority.    *See In re Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig.*, No. 1:13-CV-4222-TWT, 2017 WL 2501757, at *12 (N.D. Ga. June 9, 2017) ("Under 16 C.F.R. § 700.1(e), a product that is becoming part of a house is not a consumer product if it is being utilized to create the house; however, if the product is being added to an already existing house, then it is consider a consumer product.").

Given that the issue has been perfunctorily briefed – each party relies on a single non-binding case to support his or its respective position – the undersigned declines to decide which approach is correct as a matter of law in deciding the present motion.    Instead, the undersigned notes that the case relied on by WSM, which as the movant bore the initial burden of showing entitlement to relief under Rule 12(b)(6),[4] is not factually similar to this case, nor does it even stand for the legal proposition that WSM claims it does.    Silverstein, on the other hand, has cited a case that is more factually on-point and has accurately conveyed the reasoning of that case in his briefing, and WSM declined the opportunity to submit a reply explaining why WSM's position is superior to Silverstein's.    Thus, the undersigned

---

[4] *See, e.g.*, *Branch Banking & Tr. Co. v. Howard*, Civil Action No. 12-0175-WS-N, 2013 WL 172903, at *1 (S.D. Ala. Jan. 16, 2013) (Steele, C.J.) ("Rule 12(b)(6) movant[] bears the initial burden of demonstrating that it is entitled to dismissal…" (citing cases)).

concludes that WSM has failed to demonstrate that it is entitled to relief from Count Five under Rule 12(b)(6).[5]

### III. *Conclusion*

Accordingly, the undersigned **RECOMMENDS** that WSM's Rule 12(b)(6) motion to dismiss Count Five (Doc. 36) **DENIED**.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings

---

[5] Silverstein attached several exhibits to his response. At most, the undersigned has considered Exhibit C, the invoice for the windows and doors (Doc. 48-3), as confirmation that Silverstein himself purchased those items. The undersigned finds it unnecessary to consider the other exhibits in resolving the motion. Accordingly, the present motion need not be converted into a motion for summary judgment. *See Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (For "Rule 12(b)(6) dismissals, it is generally true that the 'scope of the review must be limited to the four corners of the complaint.' *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). If matters outside the pleadings are presented by the parties and considered by the district court, the Rule 12(b)(6) motion must be converted into a Rule 56 summary judgment motion. Fed. R. Civ. P. 12(d). This Court, however, has recognized an important qualification to this rule where certain documents and their contents are undisputed: 'In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.' *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (stating that 'a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute').").

or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."   11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

   **DONE** this the 14th day of February 2018.

                    */s/ Katherine P. Nelson*
                    **KATHERINE P. NELSON**
                    **UNITED STATES MAGISTRATE JUDGE**